FILED
NOV 29 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDIRIZAK ABDI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, SHERIFF BILL GORE, DEPUTY SHERIFF N. BIER, and DOES 1-10, INCLUSIVE,<br><br>　　　　　Defendants. | Case No.: 3:18-cv-00713BEN-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Abdirizak Abdi ("Abdi") brings this action under 42 U.S.C. § 1983 for damages arising from a car stop at a DUI checkpoint. Before the Court is Defendants County of San Diego ("County"), San Diego County Sheriff's Department ("Sheriff's Department"), Sheriff Bill Gore, and Deputy Sheriff N. Bier ("Deputy Bier") (collectively "Defendants") Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6). Because Plaintiff fails to set forth sufficient facts on which to base his municipal liability and retaliation claims, Defendants' Motion to Dismiss is **GRANTED** as to claims two, three, and four. Claim six for battery is also dismissed per joint stipulation of the parties.

///

## II. BACKGROUND

On March 18, 2017, shortly after midnight, Abdi, who was working as an Uber driver, had four passengers in his car whom he was driving to their home. Defendants from the Sheriff's Department stopped Abdi at a DUI checkpoint on Highway 101 in Encinitas, California. (FAC ¶¶ 13, 14.) After Abdi pulled over, Deputy Bier approached the vehicle and asked for his driver's license.[1] (*Id.* at ¶ 14.) Abdi was then ordered out of the car and asked a series of questions that included his country of origin, citizenship, religion, and whether he had consumed any drugs or alcohol. (*Id.* at ¶¶ 16–19.) Abdi initially refused to answer Deputy Bier's questions based on his belief that it was a violation of his civil rights, which Abdi contends angered Deputy Bier. (First Amended Complaint "FAC" ¶¶ 16-19.) Abdi eventually replied to Deputy Bier stating he was from Somalia and is an American citizen to quell Deputy Bier's anger and prevent further discriminative conduct directed at him. (*Id.* at ¶ 17.) When asked if he had been drinking, Abdi responded "no", as a practicing Muslim, he is forbidden from drinking alcohol or using illicit drugs. (*Id.* at ¶ 19.) Thereafter, Abdi contends Deputy Bier subjected him to several sobriety tests which he allegedly passed only to be still arrested for "suspicion of drug use." (*Id.* at ¶¶ 20–26.) As a result of his arrest, Abdi's car was impounded, his passengers had to find alternative transportation home, Abdi was booked into the Vista jail and eventually released after posting bond. (*Id.* at ¶¶ 20–26.)

Plaintiff brought this suit alleging seven causes of action under federal and state law for (1) unlawful seizure, detention, and arrest in violation of Plaintiffs' Fourth Amendment rights under 42 U.S.C. § 1983[2]; (2) retaliation in violation of Plaintiffs' First Amendment rights under 42 U.S.C. § 1983; (3) a *Canton* claim for unlawful pervasive practice in

---

[1] Abdi's drivers license reflected his full Middle-Eastern birth name of "Abdi Abdirizak."
[2] Defs.' Mot. to Dismiss does not address whether the First Cause of Action should be dismissed.

violation of Plaintiffs' Fourth Amendment rights under 42 U.S.C. § 1983[3]; (4) a *Canton* claim for failure to train in violation of Plaintiffs' Fourth Amendment rights under 42 U.S.C. § 1983[4]; (5) Violation of the Bane Act under California Civil Code § 52.1(b)[5]; (6) battery[6]; and (7) false imprisonment[7]. (Doc. No. 1.) On June 14, 2018, Abdi filed a First Amended Complaint alleging the same seven causes of action under federal and state law, but with revised defendants associated with each cause of action. (Doc. No. 5.)

Defendants filed a motion to dismiss the FAC to which Plaintiff responded and Defendant replied. (Doc. Nos. 6, 7.) The Motion is fully briefed and deemed suitable for determination without oral argument. *See* Local Rule 7.1

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully …. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). A court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Additionally, a pleading that offers "labels and conclusions" or "a

---

[3] *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).
[4] *Id.*
[5] Defs.' Mot. to Dismiss does not address whether the Fifth Cause of Action should be dismissed.
[6] Plaintiff agreed to withdraw the Sixth Cause of Action for Battery. (Pl.'s Mem. of Points and Authorities in Opp'n to Mot. to Dismiss, at p. 3).
[7] Defs.' Mot. to Dismiss does not address whether the Seventh Cause of Action should be dismissed.

3

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederiet Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). Where a court dismisses for failure to state a claim under Rule 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## IV. DISCUSSION

### A. Defendants' Request for Judicial Notice.

As an initial matter, Defendants request that the Court take judicial notice of the following court records:

1. Plaintiff Abdirizak Abdi's August 21, 2017, Government Tort Claim Form. (Doc. No. 6-2, Exh. A.)
2. County of San Diego's October 12, 2017 Notice of Rejection of Claim. (Id., Exh. B.)

The Court finds both documents relevant to the instant action and **GRANTS** Defendant' request for judicial notice as to the aforementioned documents.

### B. Defendants' Motion to Dismiss.

Defendants argue that the Court should dismiss claims two, three, four and six of the FAC. The Court addresses each argument in turn.

#### 1. Second Cause of Action-*Retaliation*.

Abdi alleges that Deputy Bier arrested him in retaliation for Abdi exercising his legal right under the First Amendment to refuse to respond to "questioning about his country of origin, citizenship, and religion." (FAC ¶¶ 40-44.) In their motion, Defendants contend Abdi fails to sufficiently allege facts that support federal civil rights liability. (Doc. No. 6 at 1.)

To succeed on a First Amendment retaliation claim, Abdi must prove that (1) he was engaged in a constitutionally protected activity; (2) Deputy Bier's actions were intended to 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity of not responding to questioning was a substantial motivating factor for Deputy Bier's arresting him—i.e., there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (2016) (citing *O'Brien v. Welty*, 818 F.3d 920 (2016)).

The First Amendment protects both the "voluntary public expression of ideas" and the "concomitant freedom not to speak." *Harper & Row Publishers, Inc. v. Nat. Enterps.*, 471 U.S. 539, 559 (1985) (quoting *Estate of Hemingway v. Random House, Inc.*, 23 N.Y. 2d 341, 348 (1968); *see Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 992-93 (E.D. Cal. 2015) (stating the same in the context of First Amendment retaliation claim related to action taken against plaintiff after she refused to answer officers' questions); *see also Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988) ("[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say.")

In this case, the Court finds that Abdi has not sufficiently alleged a claim for retaliation. Assuming Abdi has sufficiently demonstrated that he was engaged in a constitutionally protected activity, he alleges insufficient facts to support the second and third elements of the First Amendment Claim – namely that Defendants' actions would chill a person of ordinary firmness, and that engaging in this constitutionally protected right was a substantial motivating factor in Deputy Bier's conduct. Here, Abdi avers that he only later responded because Deputy Biers' anger at Abdi's exercise of his protected activity was causing. (Doc. No. 5 ¶ 41.) However, Abdi fails to take into account that Deputy Bier was in the process of effectuating a DUI checkpoint, not attempting to restrict Abdi's freedom of speech. Moreover, Abdi provides no evidence that Deputy Bier was "angry" with him. But, even if Deputy Bier was "angry" with Abdi, that alone does not equate to a claim for retaliation. Without more, Abdi's simple restatement of allegations

from the FAC falls short of demonstrating a nexus between Deputy Bier's actions from those that were allegedly targeted to chill Abdi's speech.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' second claim for retaliation to the extent it is based upon a First Amendment violation **with leave to amend**.

### 2. Third Cause of Action-*Canton* Liability for *Unlawful Pervasive Practice*.

Abdi's third cause of action alleges the County is liable under *City of Canton v. Harris* because it maintained a "pervasive practice" of "questioning persons with dark skin and Middle-Eastern names about their religion and country of origin." *See City of Canton v. Harris*, 489 U.S. 378 (1989). (FAC ¶ 46.) Defendants argue Abdi failed to allege sufficient facts to support his unlawful pervasive practice claim. (Defs.' Mot. to Dismiss, 4:3–25.)

A plaintiff may bring a suit for deprivation of federal rights against any person acting under color of state law. 42 U.S.C. § 1983. Municipalities and other local government units are among those persons to whom Section 1983 applies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under Section 1983. *City of Canton*, 489 U.S. at 389. A "policy" within the meaning of Section 1983 is not limited to official legislative action. *Thompson v. City of L.A.*, 885 F.2d 1439, 1443–44 (9th Cir. 2005). Custom may provide another alternative for the plaintiff to assert a Section 1983 action for constitutional deprivations. *Monell*, 436 U.S. at 690–91. A plaintiff may establish municipal liability only if he shows that "his injury resulted from a 'permanent and well settled' practice." *Thompson*, 885 F.2d at 1444

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970)).[8] In such actions, proof of random acts or isolated events is insufficient to establish custom. (*Id.*) Rather, a plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). Once such showing is made, a municipality may be held liable for its custom "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Navarro v. Block*, 72 F.3d 712, 715 (quoting *Thompson*, 885 F.2d at 1444).

In the present case, Abdi alleges that County, through the actions of the Sheriff's Department, engaged in an unlawful pervasive practice of questioning dark-skinned individuals, or those with Middle Eastern names about their religion and country of origin. (FAC ¶¶ 46–47.) However, Abdi fails to allege sufficient facts to demonstrate how his injury arose from a pervasive practice engaged in by the Sheriff's Deputies that is so "permanent and well-settled" so as to constitute a custom or well-settled practice. Abdi also fails to allege sufficient facts of repeated constitutional violations for which deputies and/or employees were not discharged or reprimanded for similar conduct. The only facts provided by Plaintiff are those pertaining to a single incident between him and Deputy Bier at a DUI checkpoint. (FAC ¶ 13.) "Proof of a single incident of unconstitutional activity is not sufficient to impose liability ... unless proof of the incident includes proof that it was caused by an existing, unconstitutional, municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' third claim **with leave to amend**.

---

[8] "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, if so 'permanent and well-settled as to constitute a custom or usage with the force of law.'" *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970).

7

Therefore, Defendants' Motion to Dismiss claim three is **GRANTED** without prejudice.

### 3. Fourth Cause of Action-*Canton* Liability for *Failure to Train*.

Count four alleges that Defendant County failed to provide adequate training for its deputies. (Doc. No. 6 at 5.)

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v.* Thompson, 131 S. Ct. 1350, 1359-60 (2011) (citation omitted). Analyzing claims against municipal entities for failure to train employees regarding federal constitutional rights is a subsection of the *Monell* analysis. *See Monell v. Dep't of Soc. Serv's of City of N.Y.*, 436 U.S. 658 (1978). Local governments may not be sued under § 1983 for an injury inflicted solely by an employee or agent. *Monell*, 436 U.S. at 693. In limited circumstances, however, local governments may be held liable under § 1983 for inadequate training of an employee "when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Training is inadequate for purposes of § 1983 when "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (*Id.* at 390.) "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S. Ct. at 1359 (citation omitted). The standard is deliberately high in these types of cases because applying a less demanding standard would circumvent the rule against *respondeat superior* liability of municipalities. *Bd. of Cnty. Comm'n of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 392 (1997).

In the face of these very specific and demanding requirements, the FAC alleges nothing more than unsupported legal conclusions that Defendant County failed to train its

Sheriff's Deputies. Abdi argues the Sheriff's Department did not adequately train its deputies to properly assess whether there was any "reasonable suspicion" or "probable cause" to arrest and detain Abdi at the DUI checkpoint. (FAC ¶ 52.) Abdi further alleges that the Sheriff's Department failed to adequately train its deputies because they were deliberately indifferent to the "obvious consequences" of questioning dark-skinned individuals, or those with Middle Eastern names, about their religion and country of origin. (FAC ¶¶ 52–53.) As such, the Sheriff's Department failure to train its deputies resulted in a deprivation of Abdi's individual rights. (FAC ¶ 54.)

However, Abdi failed to allege sufficient facts to demonstrate the Sheriff's Department failed to properly train its deputies or point out any deficiency in the existing training regime. A conclusory pleading, unsupported by factual allegations is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (2009); *Twombly*, 550 U.S. at 555. Specifically, Abdi does not point to any facts showing how the failure to train amounts to the Sheriff's Department deliberate indifference to his individual rights. Instead, Abdi basis his argument on a single incident occurring at a DUI checkpoint as the basis for a failure to train claim.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' fourth claim **with leave to amend.**

### 4. Sixth Cause of Action-*Battery*.

In his Opposition to Defendants' Motion, Abdi agrees to withdraw his sixth cause of action for battery. (Doc. No. 7 at 3.) Defendants have no objection to the dismissal of the sixth cause of action for battery. (Doc. No. 9 at 1).[9]

---

[9] In the Opposition, Abdi also agreed to file a Joint Motion to Dismiss the Sheriff's Department as a defendant in this matter. (Doc. No. 7 at 3.) However, as of the date of this Order, the Court has not received said joint motion from the parties. Until said joint motion is received, the Court declines to dismiss the Sheriff's Department or Sheriff Gore as defendants in this matter.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' sixth claim **without prejudice**.

## V. CONCLUSION

Defendant County's motion to dismiss is **GRANTED**. As stated above, the Court grants Defendant's motion to dismiss without prejudice.

**IT IS SO ORDERED.**

Dated: November 29, 2018

HON. ROGER T. BENITEZ
United States District Judge